DECISION
{¶ 1} In this original action, relator, Jane DeLany, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders, mailed June 27, 2003, December 10, 2004, January 28, 2005, and February 16, 2005, to the extent that they denied her requests for temporary total disability ("TTD") compensation beginning January 23, 2002 and July 23, 2004. Relator additionally seeks to have the commission enter an order that declares her entitled to receive TTD compensation based on her return to work on November 11, 2001. Relator submits that she qualifies for compensation under the law set forth in State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305.
 {¶ 2} On February 6, 2001, relator sustained an industrial injury while working as a banquet server for respondent Dublin Suites, Inc. Relator slipped on a wet floor and fell, landing on her left hip. A week later, relator fell a second time while working which aggravated the symptoms of her previous injury. On March 13, 2001, the commission recognized her claim for "sprain lumbar region; sprain of neck; [and] sprain thoracic region."
 {¶ 3} On July 11, 2001, the Ohio Bureau of Workers' Compensation ("bureau") issued an order granting TTD compensation. Dublin Suites administratively appealed the bureau's decision. A district hearing officer ("DHO") affirmed the order, and Dublin Suites appealed again. After conducting a hearing, a staff hearing officer ("SHO") issued a modified order on October 24, 2001. The SHO granted TTD compensation for the period beginning June 3, 2001 and ending October 28, 2001. No compensation would be paid after October 28, because Dublin Suites offered relator light-duty work starting October 29, 2001.
 {¶ 4} However, relator never reported to Dublin Suites for the light-duty work. Instead, she moved to North Carolina without informing Dublin Suites of her move. In a letter dated November 12, 2001, Dublin Suites notified relator that, due to her failure to report for work or call a supervisor for three consecutive days, she was considered to have "voluntarily quit" and was terminated pursuant to company policy.
 {¶ 5} Upon moving to North Carolina, relator immediately sought chiropractic treatment for her injuries with Bradley Gerhard, D.C. On November 11, 2001, relator reported for training to work at a Bath Body Works store in a local mall. Relator quit after seven hours, purportedly due to severe back pain. Soon after, Dr. Gerhard certified a period of TTD beginning November 3, 2001.[1]
 {¶ 6} On December 10, 2001, the bureau issued an order granting relator's request for TTD compensation based on Dr. Gerhard's certification. The order granted compensation starting November 12, 2001 and extending through December 7, 2001. Thereafter, compensation would only be paid upon receipt of medical proof of disability.
 {¶ 7} Dublin Suites appealed the bureau's December order. Following a hearing, a DHO issued a corrected order on January 22, 2002. The DHO vacated the December order and denied TTD compensation based on relator's failure to accept Dublin Suite's bona fide offer for return to light-duty work. Relator administratively appealed, and the matter was scheduled for hearing before an SHO.
 {¶ 8} On February 25, 2002, the SHO affirmed the denial of TTD compensation for November 12, 2001 through January 22, 2002. The SHO agreed that TTD compensation was not properly payable because of relator's failure to return to work, but also noted that there was insufficient medical evidence to explain the chiropractor's opinion that her allowed conditions resulted in TTD as of November 12, 2001. On March 6, 2002, the commission refused relator's subsequent administrative appeal.
 {¶ 9} On March 14, 2002, relator moved to allow an additional claim of "cervical disc herniation C3-4." Following a hearing, a DHO issued an order granting the additional allowance. Dublin Suites appealed the order, and the commission scheduled a hearing before an SHO. On July 24, 2002, the SHO affirmed the order, but mistakenly stated the additional claim as "cervical disc degeneration C3-4."
 {¶ 10} Meanwhile, on June 25, 2002, Dr. Gerhard certified his second period of TTD compensation, again beginning November 3, 2001. On July 17, 2002, the bureau mailed an order granting compensation. Dublin Suites appealed the order.
 {¶ 11} On September 10, 2002, a DHO issued an order denying the requested TTD compensation. Relying on the February 25, 2002 order, which had previously denied compensation through January 22, 2002, the DHO first agreed that TTD compensation was not properly payable after relator's refusal of light-duty work. The DHO also noted that the record indicated that relator voluntarily abandoned the job market, which further removed her from entitlement to TTD compensation. Relator appealed the DHO's order.
 {¶ 12} On October 6, 2002 — before an SHO heard the appeal — the Ohio Supreme Court issued its decision in McCoy. InMcCoy, the court examined eligibility for new TTD benefits for claimants who, after suffering injury and receiving TTD benefits, voluntarily abandoned their original employment but subsequently entered the workforce. The court held that voluntary abandonment of a claimant's former employment was not a permanent bar to eligibility for TTD compensation.
 {¶ 13} Subsequently, on November 4, 2002, an SHO issued an order vacating the order of September 10. The SHO stated that he believed relator was disabled due to all of the conditions allowed in her claim, including the additionally allowed conditions. The SHO also found that there was insufficient evidence to prove that relator voluntarily abandoned her former position of employment. Lastly, applying the Ohio Supreme Court's new decision in McCoy, the SHO found that relator re-entered the workforce at Bath Body Works and became TTD due to that job activity. Thus, the SHO granted TTD compensation from January 22, 2002 through November 4, 2002.
 {¶ 14} On November 13, 2002, Dublin Suites appealed the SHO's order. Dublin Suites also moved for relief from the July 24, 2002 SHO order under R.C. 4123.52. Dublin Suites argued that the additionally allowed claim should only include cervical disc herniation — not degeneration.
 {¶ 15} On January 7, 2003, three commissioners voted to hear Dublin Suites' administrative appeal of the November 4, 2002 order. However, before that hearing occurred, an SHO conducted a hearing and issued an order regarding Dublin Suites' request under R.C. 4123.52. The SHO issued an order on January 27, 2003, declaring that the previous hearing officer had committed a clerical error. Accordingly, the SHO modified the order to allow the additional condition of "cervical disc herniation at C3-4" only. The SHO then vacated the November 4, 2002 order because it was based, in part, on the erroneously allowed claim.
 {¶ 16} On April 3, 2003, the commission, represented by two individual commissioners and the chairman, issued an interlocutory order vacating the SHO's January 27, 2003 order. The commission found that the SHO did not have jurisdiction over the November order since the commission had already accepted the appeal. Thus, both the administrative appeal and the request for relief under R.C. 4123.52 were scheduled for a future hearing before the three-member commission.
 {¶ 17} On June 27, 2003, the commission issued an order granting both of Dublin Suites' requests. After reiterating and journalizing its actions in the April 3, 2003 interlocutory order, the commission granted Dublin Suites' motion for relief pursuant to R.C. 4123.52. The commission found that relief was appropriate to resolve the clear clerical error present in the July 24, 2002 order, which allowed cervical disc degeneration when relator had sought the allowance for herniation. The commission therefore allowed "cervical disc herniation at C3-4," while stating that a claim for disc degeneration was neither allowed nor disallowed.
 {¶ 18} The commission then noted that TTD compensation from November 3, 2001 through January 22, 2002, had already been denied by an SHO on February 25, 2002. Therefore, the commission declared that the issue of TTD compensation from November 3, 2001 through January 22, 2002, had already been decided and was barred by res judicata.
 {¶ 19} The commission also denied TTD compensation from January 23, 2002 forward, providing two reasons. First, the commission found that relator voluntarily abandoned her employment with Dublin Suites when she violated the absenteeism policy. The commission then discussed the application of McCoy,
as well as subsequent related case law, to the facts of relator's claim. Noting that relator was not gainfully employed as of January 23, 2002 — the date compensation would begin — and had not attempted any employment after Bath Body Works, the commission found her ineligible for TTD compensation.
 {¶ 20} Second, the commission found that no evidence demonstrated relator was incapable of returning to the light-duty employment offered by Dublin Suites in 2001. Further, no records or reports from Dr. Gerhard reveal any flare-up or worsening of relator's condition; instead, the doctor's notes continuously indicated that relator continued to suffer from chronic strain or sprain. Thus, the commission denied TTD based on the lack of sufficient contemporaneous medical evidence demonstrating a change in relator's condition that would merit such an award.
 {¶ 21} Less than a month later, relator began treatment with another doctor located in Columbus, Ohio. On September 28, 2004, Stephen Altic, D.O., certified TTD beginning July 23, 2004. Relator moved for TTD compensation based on Dr. Altic's certification on October 29, 2004.
 {¶ 22} On December 10, 2004, a DHO denied relator's request, citing the June 27, 2004 commission order denying compensation. Relator administratively appealed the order. On January 28, 2005, an SHO issued an order affirming the DHO. The SHO found that, after voluntarily abandoning her job with Dublin Suites, relator was not injured again during the course of re-employment. Accordingly, she was not eligible for TTD compensation. The commission refused further appeal on February 16, 2005.
 {¶ 23} On March 24, 2005, relator filed this mandamus action, seeking to have the commission's cumulative orders denying TTD compensation vacated. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. On September 29, 2005, the magistrate issued his decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate found that, at the time of the February 25, 2002 hearing, there was no compelling reason for relator to argue that her return to work should reinstate her eligibility for TTD compensation. Thus, since McCoy was not decided until after that hearing, the doctrine of res judicata did not bar relator's subsequent attempts to litigate the issue of her return to employment after the February 25, 2002 order.
 {¶ 24} The magistrate then addressed the commission's application of McCoy and its progeny to relator's claim. The magistrate found that the commission misapplied McCoy when it concentrated on the requested start date of compensation rather than the date of the alleged re-injury. However, the commission also denied TTD based on the lack of contemporaneous medical evidence to support relator's claim of disability. Noting thatMcCoy also requires the claimant to be removed from re-employment by the disability, the magistrate found that the commission correctly denied TTD compensation where there was no proof that relator's injury caused her to leave re-employment after seven hours on November 11, 2001. Accordingly, the magistrate found that there was some evidence upon which the commission relied to support its June 27, 2003 order.
 {¶ 25} The magistrate additionally found that the June 27, 2003 order precluded further litigation of relator's reinstatement of eligibility for TTD compensation under McCoy.
Therefore, the remaining orders were correctly determined under the theory of res judicata. The magistrate recommended that the court deny relator's request for mandamus.
 {¶ 26} Both parties filed timely objections to the magistrate's decision. Dublin Suites submits that the magistrate erred in failing to find that relator's claims for TTD compensation beginning January 23, 2002, are barred by the commission's January, February, and March 2002 orders and the doctrine of res judicata. Dublin Suites also argues that the magistrate erred in finding that the commission misappliedMcCoy. Relator contends that the magistrate erred in concluding that the commission properly denied TTD based on the lack of medical evidence supporting disability. Relator also asserts that the magistrate wrongfully determined that the combination of the commission's June 27, 2003 order and the doctrine of res judicata bars relator's renewed claim for TTD compensation for the period beginning June 23, 2004.
 {¶ 27} Dublin Suites' first objection is a general restatement of arguments previously submitted to and correctly determined by the magistrate. Dublin Suites submits that relator could have — and should have — raised the issue of whether her return to work reinstated her eligibility for TTD compensation during hearings that preceded the commission's January 22, 2002, February 25, 2002, and March 6, 2002 orders. Because relator could have raised the argument, Dublin Suites contends that the principles of res judicata apply to preclude her from raising the argument in the subsequent hearings. However, as the magistrate correctly observed, McCoy was not decided until October 6, 2002. The state of workers' compensation law regarding TTD compensation and voluntary abandonment of employment prior to the release of McCoy did not provide relator with motivation to litigate the issue effectively. Moreover, to the extent that TTD compensation commencing January 23, 2002, remained an issue during the May 13, 2003 hearing (resulting in the June 27, 2003 order), the commission's previous orders concerning the same time period did not preclude relator from submitting her arguments any more than they prevented Dublin Suites from presenting its own position during litigation. Accordingly, res judicata does not apply to bar relator's claim, and Dublin Suites' first objection is overruled.
 {¶ 28} Dublin Suites' second objection fails for two reasons. One, the objection assumes that the issue of entitlement to TTD benefits after relator's return to work was fully litigated and determined. In that this objection is predicated on the validity of the first, it must also fail. Alternatively, we also find that the commission misapplied McCoy to the extent that it found relator ineligible because she was not employed as of January 23, 2002 — the requested start date of compensation — and had not re-entered the job market or become gainfully employed since her single day of work on November 11, 2001. The start date of compensation is irrelevant to the question of whether relator became entitled to TTD benefits after returning to the workforce. The pertinent issue is whether relator became disabled while working on November 11, 2001. The commission's focus on the state of relator's disability as of January 23, 2002, was misplaced. Accordingly, we overrule Dublin Suites' second objection to the magistrate's decision.
 {¶ 29} Relator's objections are similarly unpersuasive. Relator asserts that the magistrate erred in finding that the commission properly denied TTD compensation for the period beginning January 23, 2002, based on the lack of sufficient contemporaneous medical evidence demonstrating a change in relator's condition. Relator contends that the magistrate improperly usurped the commission's role as the fact finder.
 {¶ 30} In McCoy, the Ohio Supreme Court held:
* * * [A] claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
Id. at ¶ 39. The court continued: "It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities." Id. at ¶ 40. Thus, to become entitled to TTD compensation after a finding of voluntary abandonment of employment, a claimant must prove that she (1) returned to work, and (2) became temporarily and totally disabled — again — while working at her new job.
 {¶ 31} Neither party disputes that relator returned to work, even if briefly, on November 11, 2001. The question, then, is whether relator became disabled while she was so employed. The commission reviewed the evidence and found:
* * * [T]here is no medical evidence showing that the injured worker was incapable of a return to the light duty job, as offered by the employer. None of the C-84 reports or office records of Dr. Gerhard beginning 11/03/2001 show any flare-up or worsening in her condition after she attempted to return to work on 11/11/2001. Rather, these office notes continually diagnose" chronic sprain/strain continues." * * *
Because the contemporaneous medical evidence did not support a finding that relator became disabled during her seven-hour shift at Bath Body Works, the commission found her to be ineligible for TTD compensation.
 {¶ 32} While the magistrate did review and discuss additional evidence in his decision regarding the commission's finding of insufficient contemporaneous medical evidence, he did not usurp the commission's role as fact finder. Instead, he confirmed the existence of evidence supporting the commission's conclusions. The magistrate has a duty to confirm whether or not the record supports the order of the commission. The magistrate did not usurp the role of the commission but acted within his power to examine the basis of the commission's order. Accordingly, the magistrate correctly deferred to the commission's order, as there was some evidence upon which the commission relied in reaching its conclusion. Relator's first objection is overruled.
 {¶ 33} Relator's second objection asserts that the magistrate erred in concluding that res judicata barred TTD compensation beginning June 23, 2004, as determined by the commission's December 10, 2004, January 28, 2005, and February 16, 2005 orders. Relator argues that the magistrate cannot find that the commission misapplied McCoy but also say that the issue of whether, under McCoy, relator had reinstated her eligibility for TTD compensation following her return to work was fully litigated and determined by the commission.
 {¶ 34} The commission's June 27, 2003 order adjudicated relator's eligibility for TTD compensation — for the period starting November 3, 2001 and ending January 22, 2003, and for the period beginning January 23, 2002 — following her return to work. The commission found that no contemporaneous medical evidence supported the conclusion that relator became disabled while working on November 11, 2001. Approximately one month later, relator again moved for a separate period of TTD compensation, this time commencing July 23, 2004. Relator did not present any evidence demonstrating that she had attempted to return to the workforce in any fashion since November 11, 2001. Accordingly, there was no further employment to contemplate in evaluating relator's eligibility for TTD compensation for a later period. With no new circumstances, relator's ability to collect TTD compensation after voluntarily abandoning employment with Dublin Suites has been conclusively adjudicated. Accordingly, principles of res judicata preclude relator from re-litigating the effect of her seven hour return to work under McCoy.
Relator's second objection is overruled.
 {¶ 35} Following careful consideration of the parties' objections and an independent review of this matter pursuant to Civ.R. 53, we find that the magistrate properly determined the pertinent facts and applied the appropriate law to those facts. Based on the foregoing, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accord with the magistrate's recommendation and decision, relator's requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Sadler and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jane [DeLany], : :
Relator, : :
v. : No. 05AP-281 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Dublin Suites, Inc., : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on September 29, 2005 Philip J. Fulton Law Office, and Jacob Dobres, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Dinsmore Shohl, LLP, and Michael L. Squillace, for respondent Dublin Suites, Inc.
 IN MANDAMUS {¶ 36} In this original action, relator, Jane DeLany, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders[2]
to the extent that temporary total disability ("TTD") compensation is denied beginning January 23, 2002 and July 23, 2004, and to enter new orders that adjudicate her entitlement to said compensation under State ex rel. McCoy v. DedicatedTransport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, and its progeny based upon her return to work on November 11, 2001.
Findings of Fact:
 {¶ 37} 1. On February 6, 2001, relator sustained an industrial injury while employed as a "banquet server," for respondent Dublin Suites, Inc. ("employer"), a state-fund employer. The industrial claim was initially allowed for "sprain lumbar region; sprain of neck; sprain thoracic region; cervical disc herniation C3-4," and is assigned claim number 01-333043.
 {¶ 38} 2. On form C-84, Dr. Daniel Morganstern certified a period of TTD starting June 3, 2001.
 {¶ 39} 3. On July 11, 2001, the administrator of the Ohio Bureau of Workers' Compensation ("bureau") mailed an order awarding TTD compensation based on Dr. Morganstern's C-84. The employer administratively appealed.
 {¶ 40} 4. Following a September 4, 2001 hearing, a district hearing officer ("DHO") affirmed the administrator's order. The employer administratively appealed.
 {¶ 41} 5. Following an October 24, 2001 hearing, a staff hearing officer ("SHO") issued an order modifying the DHO's order. The SHO order of October 24, 2001 states:
Temporary total compensation is awarded from 06/03/2001 through 10/28/2001, closed period, based on the C-84 reports of Dr. Morganstern on file. No temporary total compensation is payable after 10/28/2001 as it is found that the employer made a written job offer to the claimant of light duty work, commencing 10/29/2001. The Staff Hearing Officer relies on the written job offer filed by the employer at hearing today, which was given to the claimant, with the accompanying position description of a front desk clerk, which is found to be within the claimant's restrictions per the latest C-84 report of Dr. Morganstern (09/18/2001), wherein he indicated under question 7 that the claimant would be capable of performing light duty work.
 {¶ 42} 6. Relator did not report for work pursuant to the written job offer on October 29, 30 and 31, 2001, nor did she call in to her employer on those days. Consequently, by letter dated November 12, 2001, the employer informed relator that because she had failed to report for work or call her supervisor for three consecutive days, she was considered to be a "voluntary quit."
 {¶ 43} 7. Relator moved her residence from Columbus, Ohio to Jacksonville, North Carolina. On November 3, 2001, she initially presented for treatment to the Schilsky Chiropractic Center located in Jacksonville. Apparently, relator was treated there by chiropractor Bradley Gerhard, D.C.
 {¶ 44} 8. On November 11, 2001, relator was employed for a total of seven hours at a "Bath Body Works" store located in Jacksonville. Relator did not continue her employment there allegedly due to her industrial injury.
 {¶ 45} 9. On November 26, 2001, Dr. Gerhard apparently certified a period of temporary total disability beginning November 3, 2001. (Dr. Gerhard's C-84 is not contained in the stipulated record.)
 {¶ 46} 10. On December 10, 2001, the bureau mailed an order granting TTD compensation based on Dr. Gerhard's C-84. The bureau's order states:
The C84 filed on 11/28/2001 by the injured worker is granted.
The request for payment of TT compensation filed on 11-28-01 is granted [illegible] following modification. Payment of TT compensation to start from 11-12-01 [illegible] than from 11-3-01 as injured worker returned to work and worked 11-11-01 [illegible]. She was unable to continue working due to severe back pain. TT compensation will be paid thru 12-7-01 will continue.
Payment of temporary total compensation beyond 12-7-01 will be considered [illegible] receipt of medical proof of disability.
This BWC Order is based on:
The C84 dated 11-26-01 from Bradley Gerhard, D.C. and verification of [illegible] due to the allowed conditions in this claim.
 {¶ 47} 11. The employer administratively appealed the bureau's order of December 10, 2001.
 {¶ 48} 12. Following a January 22, 2002 hearing, a DHO issued a "corrected order" stating:
The order of the Administrator, dated 12/10/2001, is vacated.
It is the order of the District Hearing Officer that the C-84, filed 11/28/2001, is denied.
Temporary total disability is denied from 11/12/2001 through 01/22/2002, the date of today's hearing.
The District Hearing Officer notes temporary total disability compensation was terminated in this claim as of 10/29/2001, when the injured worker was offered a bona fide offer from the instant employer to return to light duty. According to Ms. Hellman's testimony, the injured worker did not accept this offer and did not communicate further with the employer.
 {¶ 49} 13. The DHO order of January 22, 2002 indicates that neither relator nor counsel for relator appeared at the January 22, 2002 hearing. However, the employer's human resources manager, Ms. Hellman, did appear and testify.
 {¶ 50} 14. Relator administratively appealed the DHO order of January 22, 2002.
 {¶ 51} 15. Following a February 25, 2002 hearing at which relator appeared only through counsel, the SHO issued an order stating:
The Staff Hearing Officer affirms the denial of temporary total compensation for the period from 11/12/2001 through 01/22/2002.
By Staff Hearing Officer order dated 10/24/2001, temporary total compensation was denied after 10/28/2001 for the reason that the employer had made a written offer of light duty employment to the claimant, with a start date of 10/29/2001, regarding work that was within the physical restrictions identified by her attending chiropractor at the time. According to Ms. Hellman's testimony at today's hearing, the claimant did not appear for the light duty work position on 10/29/2001. The District Hearing Officer correctly found that temporary total compensation was not properly payable from the requested start date of 11/12/2001 under these circumstances.
In addition, the Staff Hearing Officer agrees with the finding that Dr. Schilsky's C-84 reports and office notes on file from 11/03/2001 forward do not adequately explain the chiropractor's opinion that the allowed conditions resulted in temporary total disability as of 11/12/2001.
 {¶ 52} 16. On March 6, 2002, another SHO mailed an order refusing relator's administrative appeal from the SHO order of February 25, 2002.
 {¶ 53} 17. On March 14, 2002, relator moved for an additional claim allowance. Following a May 14, 2002 hearing, a DHO issued an order additionally allowing the claim for "cervical disc herniation C3-4."
 {¶ 54} 18. The employer administratively appealed the DHO order of March 14, 2002.
 {¶ 55} 19. Following a July 24, 2002 hearing, an SHO issued an order stating that the DHO order of March 14, 2002 is affirmed. However, the SHO order states that the claim is additionally allowed for "cervical disc degeneration at C3-C4."
 {¶ 56} 20. Apparently, the SHO order of July 24, 2002 was not administratively appealed.
 {¶ 57} 21. Earlier, on June 25, 2002, Dr. Gerhard again certified a period of temporary total disability on form C-84. Apparently, Dr. Gerhard's June 25, 2002 C-84 again certified temporary total disability from November 3, 2001. (Dr. Gerhard's June 25, 2002 C-84 is not contained in the stipulated record.)
 {¶ 58} 22. On July 17, 2002, the bureau mailed an order stating that the June 25, 2002 C-84 was granted.
 {¶ 59} 23. The employer administratively appealed the bureau's July 17, 2002 order.
 {¶ 60} 24. Following a September 10, 2002 hearing, a DHO issued an order that modified the bureau's order of July 17, 2002. The DHO's order of September 10, 2002 states:
The District Hearing Officer denies Temporary Total Disability Compensation from 11/03/2001 to 09/10/2002.
First, the District Hearing Officer relies upon the 02/25/2002 Staff Hearing Officer order that previously denied Temporary Total Disability Compensation from 11/12/2001 through 01/22/2002. That order referenced a previous Staff Hearing Officer order, which found that Ms. Delany had been offered a light duty position within her restrictions. Temporary Total Disability Compensation was not properly payable after the light duty offer. The Staff Hearing Officer on 02/25/2002 also noted that the evidence since the light duty offer did not support that the allowed conditions were temporarily and totally disabling.
Next, the District Hearing Officer agrees with Mr. Squillace's [employer's counsel] argument that Ms. Delany also voluntarily abandoned her former position of employment. Relying upon Stateex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the District Hearing Officer finds that Ms. Delany failed to return to work or report her absence to her employer. This conduct violated the employer's written work rules that were clearly defined, had been previously identified by the employer as a dischargeable offense, and were made known to Ms. Delany. Ms. Painter [claimant's counsel] countered that Ms. Delany did not abandon the entire job market, only the proffered job with the employer of record. However, Ms. Painter offered no evidence to support this argument.
Accordingly, the District Hearing Officer finds that Temporary Total Disability Compensation is not payable as Ms. Delany has previously refused a good faith light duty job offer of work within her restrictions and has voluntarily abandoned the job market. Additionally, the District Hearing Officer notes that the C-84 from Dr. Gerhard, which certifies Temporary Total Disability Compensation beginning on 11/03/2001, provides no evidence of any change in treatment or symptoms to support the reinstatement of Temporary Total Disability Compensation, even if such was legally permissible.
 {¶ 61} 25. Relator administratively appealed the DHO order of September 10, 2002.
 {¶ 62} 26. On October 16, 2002, the Supreme Court of Ohio issued its decision in McCoy, supra.
 {¶ 63} 27. Following a November 4, 2002 hearing, an SHO issued an order that vacates the DHO order of September 10, 2002. The SHO order of November 4, 2002 states:
The order of the District Hearing Officer, from the hearing dated 09/10/2002, is vacated.
After reviewing all the evidence on file and considering the testimony of the injured worker, it is the order of the Staff Hearing Officer that the injured worker's C-84 filed 06/25/2002 is granted to the extent of this order.
It is the finding of the Staff Hearing Officer that the injured worker is disabled due to all the conditions allowed in this claim.
Temporary total compensation is ordered paid from 01/22/2002 to 11/04/2002 and is to continue upon submission of medical proof of disability. Dr. Bradley Gerhard, D.C., opined that the injured worker is disabled from the allowed conditions in this claim. The Staff Hearing Officer notes subsequent to the initial allowance that the claim has been additionally allowed for DISC HERNIATION AT C3-C4 and CERVICAL DISC DEGENERATION AT C3-C4 by Staff Hearing Officer order dated 07/25/2002 and District Hearing Officer order dated 05/14/2002.
At hearing the employer's counsel argued that the injured worker is forever barred from receiving temporary total compensation because there had been a finding by Staff Hearing Officer that the injured worker refused suitable employment within her restrictions. The Staff Hearing Officer finds this position unpersuasive. A review of the ORC 4123.56 states temporary total disability "payment shall not be made for theperiod when employee's treating physician has madea written statement that the employee when work within the physical capabilities of the employee is made available by the employer°. The statute specifically states "the termination of temporary total disability whether by order or otherwise does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled.
The Staff Hearing Officer finds that the injured worker has become temporary [sic] and totally disabled based upon the medical reports of Dr. Gerhard and the injured worker's testimony. The injured worker moved to Jacksonville, N.C. on 10/2001 because she could no longer afford to live in Columbus, Ohio without income. She shared an apartment with her daughter in Columbus, Ohio. Her daughter was moving to Jacksonville, N.C. and asked the injured worker to come live with her. Unless she planned to be homeless, the injured worker moved to Jacksonville, N.C. She sought treatment with Dr. Gerhard. The injured worker testified that even though she had symptoms of pain, she attempted to work light duty because her prior doctor in Columbus indicated she could work light duty. Bath and Body hired her on 11/11/2001. She attempted training but was unable to perform the job. She saw her doctor who immediately told her not to work. The pain increased and January 2002, she went to the Emergency Room. Dr. Gerhard began to believe that the injured worker had other conditions not found by the injured worker's previous physician. The claim was eventually allowed for CERVICAL DISC HERNIATION C3-C4 and CERVICAL DISC DEGENERATION AT C3-C4. (See 07/24/2002 order) Dr. Gerhard has been opining that the injured worker is disabled.
At hearing, the employer's counsel also argued that the injured worker is not entitled to temporary total disability because the injured worker voluntarily abandoned her former position of employment. The Staff Hearing Officer rejects this argument for several reasons.
(1) The Staff Hearing Officer finds that the injured worker has not voluntarily abandoned her employment. The Staff Hearing Officer finds that employer has not submitted sufficient evidence to make a determination of abandonment. At hearing the employer submitted an orientation checklist which lists standards of conduct/disciplinary action and areas of concern but failed to submit all documents pertaining to disciplinary action and areas of concern. The Staff Hearing Officer further notes as of 10/2001 the injured worker no longer lived in Ohio.
(2) Assuming if the evidence was present to establish voluntarily [sic] abandonment, the Staff Hearing Officer finds that State ex rel. McCoy v. Dechcated [sic]Transport. Inc. 97 Ohio St. 3d 25 applies to the facts of this case.
The injured worker re-entered the workforce at Bath and Body Works and became temporary and total [sic] disabled due to the job activity.
The injured worker testified that her condition worsen [sic]. This fact is born out by the Emergency Room visit in January 2002 and the subsequent allowances.
It is for reason noted the motion is granted.
(Emphasis sic.)
 {¶ 64} 28. On November 13, 2002, the employer filed an appeal from the SHO order of November 4, 2002.
 {¶ 65} 29. Also on November 13, 2002, the employer moved for relief pursuant to R.C. 4123.52 regarding the SHO order of July 24, 2002 granting additional claim allowances.
 {¶ 66} 30. On January 7, 2003, the three-member commission voted to hear the employer's appeal from the SHO order of November 4, 2002.
 {¶ 67} 31. On January 27, 2003, the employer's November 13, 2002 motion for relief pursuant to R.C. 4123.52 was heard by an SHO who was apparently unaware of the commission's January 7, 2003 vote. Following the hearing, the SHO issued an order finding that the SHO order of July 24, 2002 contains a clerical error in granting additional claim allowances for both a herniation and degeneration at C3-C4. The SHO order of January 27, 2003 thus modified the SHO order of July 24, 2002 to read that the claim is additionally allowed only for "cervical disc herniation at C3-4."
 {¶ 68} The SHO order of January 27, 2003 also vacated the SHO order of November 4, 2002 because it erroneously indicated the claim allowances. Relator's administrative appeal of the DHO order of September 10, 2002 was reset on the next available SHO docket.
 {¶ 69} 32. On April 3, 2003, the three-member commission issued an interlocutory order, stating:
In an order, dated 11/04/2002, issued 11/09/2002, a Staff Hearing Officer granted the injured worker's request for temporary total disability compensation.
On 11/13/2002, the employer filed an appeal from the Staff Hearing Officer order, dated 11/04/2002, issued 11/09/2002.
On 01/07/2003, the Industrial Commission voted to hear the employer's appeal, filed 11/27/2002.
On 01/27/2003, a Staff Hearing Officer granted the employer's request for relief pursuant to R.C. 4123.52. Among other things, the Staff Hearing Officer vacated the Staff Hearing Officer order dated 11/04/2002, and ordered that the injured worker's appeal, filed 09/17/2002, from the order of the District Hearing Officer, dated 09/10/2002, be reset before another Staff Hearing Officer.
The Industrial Commission, sua sponte, orders that pursuant to R.C. 4123.52, that the matter is referred to the Commission Level Hearings Section for docketing before the Members of the Industrial Commission. The questions to be heard are the employer's request for relief pursuant to R.C. 4123.52, filed 11/13/2002, and the employer's appeal, filed 11/27/2002, from the Staff Hearing Officer order, dated 11/04/2002.
If is the finding of the Industrial Commission there is evidence of sufficient probative value to warrant adjudication of the employer's request for relief pursuant to R.C. 4123.52, regarding the alleged presence of an error by the subordinate hearing officer in the findings issued on 02/01/2003, which renders the order defective.
Specifically, the Staff Hearing Officer in the order dated 01/27/2003 did not have jurisdiction to vacate the Staff Hearing Officer order dated 11/24/2002 since the Commission had previously accepted the appeal.
Based on these findings, the Industrial Commission directs that this matter be set for hearing to determine if the alleged error by the subordinate hearing officer in the findings issued on 02/01/2003, as noted herein, is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the issue under advisement and proceed to hearing the merits of the employer's appeal, filed 11/27/2002, from the order dated 11/04/2002. The Commission will thereafter issue an order on the matter of continuing jurisdiction under R.C. 4123.52. If authority to exercise continuing jurisdiction is found, the Commission will go on to address the merits of the underlying question.
This order is issued pursuant to State ex rel. Nichollsv. Indus. Comm. (1998), 81 Ohio St.3d 454; State exrel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320; and in accordance with Ohio Admin. Code 4121-3-09.
(Emphasis sic.)
 {¶ 70} 33. Following a May 13, 2003 hearing, the three-member commission issued an order that vacates the SHO order of January 27, 2003, grants the employer's motion for R.C. 4123.52 relief with respect to the additional claim allowances and grants the employer's appeal from the SHO order of November 4, 2002.
 {¶ 71} The commission held that, because it had voted on January 7, 2003 to hear the employer's appeal from the SHO order of November 4, 2002, the SHO of January 27, 2003 did not have jurisdiction to vacate the SHO order of November 4, 2002.
 {¶ 72} The three-member commission unanimously concurred in the following portion of its May 13, 2003 order:
The Industrial Commission next addresses the employer's appeal, filed 11/27/2002, from the Staff Hearing Officer order, dated 11/04/2002.
It is the order of the Industrial Commission that the employer's appeal, filed 11/27/2002, is granted and the Staff Hearing Officer order, dated 11/04/2002, is vacated.
It is the order of the Industrial Commission that temporary total disability compensation from 11/03/2001 to 01/22/2002 is denied.
The Industrial Commission finds that the period of temporary total disability compensation from 11/03/2001 through 01/22/2002 was previously denied by Staff Hearing Officer order, dated 02/25/2002. That order references a previous Staff Hearing Officer order, dated 10/24/2001, which found that the injured worker had been offered a light duty position within her restrictions commencing, 10/29/2001, and that temporary total disability compensation was not properly payable after the light duty job offer. The Staff Hearing Officer on 02/25/2002 also noted that the medical evidence after the light duty offer did not support temporary total disability as of 11/12/2001. Therefore, the period of temporary total disability compensation from 11/03/2001 through 01/22/2002 is res judicata.
 {¶ 73} Only two members of the commission concur in the remaining portion of the May 13, 2003 order:
The period of temporary total disability compensation commencing 01/23/2002 is denied for several reasons.
First, the Industrial Commission finds that the injured worker voluntarily abandoned her former position of employment when she violated a written work rule that was known or should have been known to her. Specifically, the injured worker failed to return to work or report her absence to her employer for three consecutive days from 10/29/2001 through 10/31/2001. This conduct violated the employer's written work rules that were clearly defined, had been previously identified by the employer as a dischargeable offense and were made known to the injured worker. The Industrial Commission finds that this termination from employment constitutes a voluntary abandonment on the part of the injured worker, under State ex rel. Louisiana-PacificCorp. v. Indus. Comm. (1995), 72 Ohio St.3d 401.
Counsel for the injured worker contends that she is eligible for temporary total disability compensation under State exrel. McCoy v. Dedicated Transport, Inc. (2002),97 Ohio St.3d 25. In McCoy, the Court held that an injured worker who voluntarily abandons his or her former position of employment or who is fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job. The Supreme Court also stressed in McCoy, "It is important to note that this holding is limited to claimant's who are gainfully employed at the time of their subsequent disabilities." This pronouncement was recently reiterated in State ex rel.Jennings v. Indus. Comm. (2003), 98 Ohio St.3d 288. Counsel argues that the injured worker reentered the workforce on 11/11/2001 when she worked for one day at Bath and Body Works and this re-entering of the job market entitles her to temporary total disability compensation. The Industrial Commission disagrees. The Industrial Commission finds that the injured worker was not gainfully employed as of 01/23/2002, the beginning date of compensation at issue. In fact, the injured worker has not attempted any employment nor reentered the job market and become gainfully employed at any time since her one day of work at Bath and Body Works on 11/11/2001. Therefore, she is not entitled to temporary total disability compensation.
Secondly, the Industrial Commission denies temporary total disability compensation due to the lack of sufficient contemporaneous medical evidence demonstrating a change in the injured worker's condition. The Industrial Commission finds that there is no medical evidence showing that the injured worker was incapable of a return to the light duty job, as offered by the employer. None of the C-84 reports or office records of Dr. Gerhard beginning 11/03/2001 show any flare-up or worsening in her condition after she attempted to return to work on 11/11/2001. Rather, these office notes continually diagnose "chronic sprain/strain continues." Furthermore, the Industrial Commission finds that even if the medical evidence did document a change in her condition, temporary total disability compensation is precluded based on the injured worker's voluntary abandonment of employment and failure to reenter the workforce and become gainfully employed under McCoy and Jennings. Therefore, for the reasons set forth above, the injured worker's request for temporary total disability compensation, commencing 01/23/2002, is denied.
 {¶ 74} 34. On July 23, 2004, relator was initially examined by Stephen Altic, D.O., whose office is located in Columbus, Ohio. On September 28, 2004, Dr. Altic completed a C-84 certifying TTD beginning July 23, 2004.
 {¶ 75} 35. On October 19, 2004, relator moved for TTD compensation beginning July 23, 2004, based upon reports from Dr. Altic.
 {¶ 76} 36. Following a December 6, 2004 hearing, a DHO issued an order denying relator's motion for TTD compensation.
 {¶ 77} 37. Relator administratively appealed the DHO order of December 6, 2004.
 {¶ 78} 38. Following a January 24, 2005 hearing, an SHO issued an order affirming the DHO order of December 6, 2004. The SHO order of January 24, 2005 states:
The Staff Hearing Officer finds as the District Hearing Officer did that per a 05/13/2003 order the claimant was denied temporary total benefits based on a finding of voluntary abandonment based on a violation of a written work rule.
At hearing the case of State ex rel. McCoy v. DedicatedTransport, Inc. (2002) 97 Ohio St. 3d 25 was discussed. The holding of this case, that a claimant who voluntarily abandons her job can again receive temporary total benefits if the claimant re-enters the work force and due to the original injury again becomes disabled while working at the re-entered job was proposed by the claimant as a basis to pay temporary total benefits.
In the instant case the claimant did return to a job for one day, on 11/11/2003 [sic], but only worked that one day after previously losing her job based on voluntary abandonment as explained earlier.
Consequently, the claimant was not disabled again whileworking as of 07/23/2004, therefore, this fact pattern does not qualify under the McCoy rationale so as to reinstitute temporary total benefits.
Therefore, based on this explanation there is no legal basis to pay temporary total benefits as of 07/23/2004.
(Emphasis sic.)
 {¶ 79} 39. On February 16, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO order of January 24, 2005.
 {¶ 80} 40. On March 24, 2005, relator, Jane DeLany, filed this mandamus action.
Conclusions of Law:
 {¶ 81} Two main issues are presented: (1) preliminarily, under the doctrine of res judicata, did the SHO order of February 25, 2002 preclude relator from subsequently litigating McCoy's impact on her November 11, 2001 return to work; and (2) did the commission misapply McCoy and its progeny to deny relator TTD compensation beginning January 23, 2002 and, thereafter, beginning July 23, 2004?
 {¶ 82} The magistrate finds: (1) the SHO order of February 25, 2002 did not preclude relator, under the doctrine of res judicata, from subsequently litigating at the May 13, 2003 commission hearing McCoy's impact on her November 11, 2001 return to work; and (2) of the two reasons given by the commission in its May 13, 2003 order for denying TTD compensation commencing January 23, 2002, the commission's second reason properly adjudicates the McCoy issue. Thus, the commission did not abuse its discretion in denying TTD compensation commencing January 23, 2002 in its May 13, 2003 order, nor in subsequent orders adjudicating relator's request for TTD compensation beginning July 23, 2004.
 {¶ 83} Turning to the first question, the doctrine of res judicata applies to administrative proceedings at the Industrial Commission of Ohio. Jacobs v. Teledyne, Inc. (1988),39 Ohio St.3d 168; State ex rel. B.O.C. Group, General Motors Corp. v.Indus. Comm. (1991), 58 Ohio St.3d 199, 200-201.
 {¶ 84} Res judicata operates to preclude the relitigation of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.B.O.C. Group, at 200. It applies not only to defenses which were considered and determined, but, also, to those defenses which could properly have been considered and determined. Id;DiPaolo v. DeVictor (1988), 51 Ohio App.3d 166, 171.
 {¶ 85} On August 9, 2000, the Supreme Court of Ohio decidedState ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, the syllabus of which states:
When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job.
 {¶ 86} Some two years later, on October 16, 2002, Baker's core rationale was extended in McCoy, supra, the syllabus of which states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 87} In McCoy, the court specifically noted that its holding presents an extension of Baker's core rationale.McCoy, at ¶ 27.
 {¶ 88} October 16, 2002, the date McCoy was decided is significant to the analysis of res judicata here.
 {¶ 89} At the February 25, 2002 hearing before the SHO, relator's entitlement to TTD compensation beyond October 28, 2001 was at issue because she had failed to report for work on October 29, 2001 in response to her employer's written offer of light duty employment. However, as of the February 25, 2002 hearing date, McCoy had not been decided. Clearly, under Baker,
relator's return to work on November 11, 2001 was irrelevant.
 {¶ 90} Thus, at the February 25, 2002 hearing, there was no compelling reason for relator to argue that her November 11, 2001 return to work should reinstate her TTD eligibility lost because of her October 29, 2001 failure to report to a job offered by her employer.
 {¶ 91} We actually do not know what relator's counsel argued at the February 25, 2002 hearing because the hearing was not recorded and there is no transcript. We do know that the SHO order of February 25, 2002 does not address the impact of relator's November 11, 2001 return to work on her TTD eligibility, an issue decided some eight months later in McCoy.
 {¶ 92} Here, in an apparent attempt at invoking res judicata, the employer, referring specifically to the February 25, 2002 hearing, states "[i]nterestingly enough, no evidence was filed at these hearings regarding Relator's alleged return to work in November, 2001." (Employer's brief, at 6.) According to the employer, "[r]elator's alleged return to work in North Carolina could have and should have been raised." Id. Thus, the employer seems to suggest that relator failed to put into evidence at the February 25, 2002 hearing, the fact of her alleged November 11, 2001 return to work and further failed to raise the issue or to argue that her November 11, 2001 return to work restored her eligibility for TTD compensation. The employer seems to conclude that the doctrine of res judicata precludes any subsequent litigation of the impact of the November 11, 2001 return to work on relator's TTD eligibility. The magistrate disagrees with the employer's conclusion.
 {¶ 93} The SHO order of February 25, 2002 is indeed a final commission order denying TTD compensation from November 12, 2001 through January 22, 2002, based in part on relator's failure to report to work on October 29, 2001 in response to the employer's written offer of employment. Moreover, relator does not challenge in this action the SHO order of February 25, 2002.
 {¶ 94} However, relator does challenge in this action the commission's denial of TTD compensation beginning January 23, 2002 in its order of May 13, 2003. Clearly, relator's failure to challenge the SHO order of February 25, 2002, or, in the alternative, relator's inability to challenge the SHO order of February 25, 2002, in no way impairs her right to challenge the commission's May 13, 2003 order to the extent that it denies TTD compensation beginning January 23, 2002. That is to say, despite the finality of the SHO order of February 25, 2002, relator was not precluded under the doctrine of res judicata from subsequently litigating the impact of her November 11, 2001 return to work under McCoy and its progeny. The doctrine of res judicata did not require relator to anticipate an expansion ofBaker's core rational during the February 25, 2002 hearing before the SHO. Apparently, the commission itself took this view of the doctrine of res judicata because it in fact did adjudicate the McCoy issue following the May 13, 2003 hearing with respect to the request for TTD compensation commencing January 23, 2002.
 {¶ 95} Based upon the above analysis, the magistrate concludes that neither the doctrine of res judicata nor relator's failure to challenge here the SHO order of February 25, 2002, bars relator from challenging the commission's May 13, 2004 determination regarding McCoy.
 {¶ 96} The second issue, as previously noted, is whether the commission misapplied McCoy and its progeny to deny relator TTD compensation beginning January 23, 2002 and later, beginning July 23, 2004.
 {¶ 97} To repeat, the syllabus of McCoy states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 98} The Supreme Court of Ohio has applied McCoy in several subsequent cases that are instructive here. In State exrel. Jennings v. Indus. Comm., 98 Ohio St.3d 288, 2003-Ohio-737, the court denied a writ of mandamus to a claimant who underwent surgery for her allowed conditions after she was fired for unexcused absenteeism. Holding that the disability caused by her surgery did not entitle her to compensation, the Jennings court explained "there is no evidence that claimant secured another job or was removed from subsequent employment by her industrial injury." Id. at ¶ 5.
 {¶ 99} In State ex rel. Hassan v. Marsh Bldg. Products,100 Ohio St.3d 300, 2003-Ohio-6022, the claimant conceded that ten days after his industrial injury he voluntarily abandoned his former position of employment with Marsh Building Products. Approximately seven weeks later, a temporary employment agency placed Hassan with Airborne Express. For the next three weeks, Hassan worked eight, 19 and one-half, and 24 hours respectively. He allegedly could no longer continue after the third week due to his allowed conditions. The commission denied Hassan TTD compensation but never examined the C-84s that Hassan submitted in support. Instead, the commission found that Hassan's voluntary departure from his employment at Marsh foreclosed the need for any evaluation of the C-84s. Hassan then filed a mandamus action in this court. While the mandamus action was pending in this court, the Supreme Court of Ohio decided McCoy. ApplyingMcCoy, this court issued a writ of mandamus ordering the commission to consider the medical evidence in light of McCoy.
Thereafter, the cause came before the Supreme Court in an appeal as of right.
 {¶ 100} Affirming this court's judgment, the Hassan court explained:
The commission and employer cumulatively raise three objections to further administrative consideration of TTC entitlement. The employer criticizes the C-84s as too flawed to support payment. The commission joins the employer in asserting that TTC is barred because claimant's medical problems began before he joined Airborne Express. Finally, they propose that claimant's less-than-full-time hours in July 2001 contradict claimant's assertion of a return to work sufficient to trigger McCoy.
The first two arguments are quickly resolved. As to the first, the commission alone evaluates evidence. State ex rel. Burley v.Coil Packing, Inc. (1987), 31 Ohio St.3d 18[.] * * * Since it has not yet examined the medical evidence, it would be premature for us to do so. As to point two, the employer and the commission contend that unless there is a specific identifiable event onthe later job that aggravates the original injury, no TTC is payable. This is incorrect, as neither McCoy nor State ex rel.Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376 * * *, contain this requirement.
The final objection to TTC payment involves the extent of claimant's subsequent employment with Airborne Express. In this case, we are persuaded by claimant's assertion that because any employment — no matter how insubstantial — bars TTC, see Stateex rel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113 * * *, then any employment should be sufficient to invoke McCoy.
Id. at ¶ 6-8. (Emphasis sic.)
 {¶ 101} In State ex rel. Eckerly v. Indus. Comm.,105 Ohio St.3d 428, 2005-Ohio-2587, Shawn Eckerly was fired for unexcused absenteeism three months after his industrial injury. Thereafter, the commission denied Eckerly TTD compensation on grounds that he had abandoned his former position of employment. There was no evidence that Eckerly was employed for any specific length of time thereafter. While a C-84 included a doctor's statement of an actual return to work date, there was no pay stubs, wage statements, tax records or any other evidence indicating that Eckerly had returned to work. There was no evidence identifying any alleged employer or the length of Eckerly's employment. Affirming this court's judgment denying the writ of mandamus, theEckerly court explained:
The present claimant seemingly misunderstands McCoy. He appears to believe that so long as he establishes that he obtained another job — if even for a day — at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to McCoy and all other TTC cases before and after: that the industrial injury must remove the claimant from his orher job. This requirement obviously cannot be satisfied if claimant had no job at the time of the alleged disability.
Id. at ¶ 9. (Emphasis sic.)
 {¶ 102} Turning to the instant case, the commission's May 13, 2003 order presents two reasons for denying TTD to claimant beginning January 23, 2002.
 {¶ 103} The first reason is set forth in two paragraphs wherein the commission finds that relator voluntarily abandoned her former position of employment when she failed to return to work or report her absences to her employer from October 29 through October 31, 2001. Thereafter, the commission quotes the following language from McCoy: "It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities." Id. at ¶ 40.
 {¶ 104} After noting that the above-quoted language was recently reiterated in Jennings, supra, the commission explained its first reason for denying TTD compensation:
* * * Counsel argues that the injured worker reentered the workforce on 11/11/2001 when she worked for one day at Bath and Body Works and this re-entering of the job market entitles her to temporary total disability compensation. The Industrial Commission disagrees. The Industrial Commission finds that the injured worker was not gainfully employed as of 01/23/2002, the beginning date of compensation at issue. In fact, the injured worker has not attempted any employment nor reentered the job market and become gainfully employed at any time since her one day of work at Bath and Body Works on 11/11/2001. Therefore, she is not entitled to temporary total disability compensation.
 {¶ 105} The commission's second reason for denial of TTD compensation is set forth in the following paragraph:
Secondly, the Industrial Commission denies temporary total disability compensation due to the lack of sufficient contemporaneous medical evidence demonstrating a change in the injured worker's condition. The Industrial Commission finds that there is no medical evidence showing that the injured worker was incapable of a return to the light duty job, as offered by the employer. None of the C-84 reports or office records of Dr. Gerhard beginning 11/03/2001 show any flare-up or worsening in her condition after she attempted to return to work on 11/11/2001. Rather, these office notes continually diagnose "chronic sprain/strain continues." Furthermore, the Industrial Commission finds that even if the medical evidence did document a change in her condition, temporary total disability compensation is precluded based on the injured worker's voluntary abandonment of employment and failure to reenter the workforce and become gainfully employed under McCoy and Jennings. Therefore, for the reasons set forth above, the injured worker's request for temporary total disability compensation, commencing 01/23/2002, is denied.
 {¶ 106} The magistrate finds that the first reason constitutes a misapplication of McCoy and it progeny.
 {¶ 107} The issue before the commission at the May 13, 2003 hearing under McCoy and its progeny was whether the industrial injury removed relator from the job she began on November 11, 2001 at the Bath Body Works store in North Carolina. The first reason set forth by the commission fails to address the issue before the commission. Instead, the commission improperly focused on relator's employment status as of January 23, 2002, the beginning date of the requested compensation.
 {¶ 108} It is not clear from the May 13, 2003 order why the commission believed that relator had a burden to show that she was gainfully employed on January 23, 2002, or to show that she had made another attempt to return to work after November 11, 2001. Perhaps the commission believed (without so stating) that its denial of TTD compensation from November 3, 2001 through January 22, 2002 precluded its consideration of the November 11, 2001 return to work that fell within the period of denied compensation. If that was the commission's reasoning, it is incorrect. As previously noted, while the commission was indeed bound by the finality of the February 25, 2002 SHO order to the extent that TTD compensation was denied in the order, the commission was not precluded from adjudicating the impact of the November 11, 2001 return to work on relator's eligibility for further compensation.
 {¶ 109} Thus, the commission's first stated reason for denial of TTD compensation commencing January 23, 2002 is invalid because it misapplies McCoy. However, as more fully explained below, the commission's second stated reason for denial of TTD compensation is valid and is supported by some evidence.
 {¶ 110} Again, the issue before the commission at the May 13, 2003 hearing under McCoy and its progeny was whether the industrial injury removed relator from the job she began on November 11, 2001 at the Bath Body Works store. That issue turns in part on the credibility of Dr. Gerhard's certification of TTD. Clearly, the commission's second stated reason for denial of TTD compensation is focused on the credibility of Dr. Gerhard's certification.
 {¶ 111} Although not cited in the commission's order of May 13, 2003, the record contains the report from Dr. Gerhard dated October 9, 2002, which states in part:
Shortly after beginning treatment in my office, Ms. Delany tried to take a job at Bed [sic] Body Works in the Jacksonville Mall. After one day of training (which did not require any lifting), Ms. Delany's lower back pain was worse, and we mutually decided that she should not start working there as planned. Since that time her condition has not improved enough to allow her to return to any type of employment.
 {¶ 112} Dr. Gerhard's October 9, 2002 report, authored some 11 months after relator's November 11, 2001 return to work at Bath Body Works, is obviously not contemporaneous medical evidence with respect to relator's condition on or about November 11, 2001.
 {¶ 113} However, the record does contain Dr. Gerhard's office notes that were contemporaneously authored with respect to relator's November 11, 2001 return to work. Dr. Gerhard's office note of November 13, 2001, two days after the return to work, states in its entirety:
S: The patient returns today stating that the numbness in her hands is better, but she continues to experience pain in her right arm.
O: Fixations are noted at the C2, T6, L4, and left sacroiliac joint. Muscle spasms are noted in the posterior cervical muscle group bilaterally. Cervical ranges of motion are limited in all planes; pain is noted with all planes except for flexion.
A: Chronic sprain/strain continues.
P: Adjust and monitor. Continue therapy to the lumbar spine. The patient was adjusted at the C2, T6, L4, and left sacroiliac joint.
 {¶ 114} There is no mention in the November 13, 2001 office note that relator had attempted a return to work two days earlier or that her "lower back pain was worse" as Dr. Gerhard asserted in his report of October 9, 2002. The same can be said for Dr. Gerhard's office notes of November 14 and November 16, 2001, which are contained in the stipulated record.
 {¶ 115} Thus, the commission is correct when it states in its May 13, 2003 order that there is "lack of sufficient contemporaneous medical evidence demonstrating a change in the injured worker's condition." The commission is also correct when it states that Dr. Gerhard's office records fail to "show any flare-up or worsening in her condition after she attempted to return to work on 11/11/2001."
 {¶ 116} Clearly, the contemporaneous medical evidence does not support Dr. Gerhard's October 9, 2002 non-contemporaneous statement that "after one day of training * * * Ms. Delany's lower back pain was worse."
 {¶ 117} Under McCoy and its progeny, relator must not only show that she reentered the workforce on November 11, 2001, she must also show that her industrial injury removed her from the workforce. While no one disputes that relator worked at a Bath 
Body Works store on November 11, 2001, the reason or motivation for her failure to continue her employment was in dispute. It is the commission that weighs the evidence. Apparently, the commission concluded that it was not the industrial injury that caused relator to discontinue her employment at the Bath Body Works store after working less then one full day there. That conclusion is supported by the commission's analysis of the medical evidence as stated in its second reason for denial of TTD compensation commencing January 23, 2002.
 {¶ 118} In short, the commission's second stated reason in its May 13, 2003 order validly adjudicates the McCoy issue and is supported by some evidence upon which the commission relied.
 {¶ 119} As previously noted, on October 19, 2004, relator moved for TTD compensation beginning July 23, 2004 based upon the reports of Dr. Altic. In denying relator's October 19, 2004 motion, the SHO order of January 24, 2005 affirms the DHO order of December 6, 2004, which states in part:
The injured worker testified that she returned to the work force in November 2003 [sic]; however she worked only one day due to her industrial injury. The District Hearing Officer finds that this issue was previously adjudicated and the industrial Commission relied upon State ex rel. McCoy v. DedicatedTransport, Inc. (2002), 97 Ohio St. 3d 25. The District Hearing Officer finds that under the McCoy case, the Court held that a person who voluntarily abandons their employment will be eligible to receive temporary total disability compensation if they reenter the work force and, due to the industrial injury, becomes temporarily and totally disabled while working at the new job. However, the Court further ruled that this holding was limited to those claimants who were gainfully employed at the time of their subsequent disability. Since the injured worker was not employed at the time she became disabled she is therefore not entitled to temporary total disability compensation.
 {¶ 120} The DHO order of December 6, 2004 and the SHO order of January 24, 2005, indicate that relator attempted to relitigate the issue previously determined by the commission in its order of May 13, 2003. The issue of whether, under McCoy,
relator had reinstated her eligibility for TTD compensation based upon her November 11, 2001 return to work had been finally determined by the commission in its May 13, 2003 order. Under the doctrine of res judicata, the commission's May 13, 2003 order precluded relator from relitigating the McCoy issue with respect to the November 11, 2001 return to work. Accordingly, the commission did not abuse its discretion in denying TTD compensation beginning July 23, 2004.
 {¶ 121} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Dr. Gerhard was apparently unaware of relator's previous TTD award and subsequent failure to report to light-duty work with Dublin Suites.
[2] On June 28, 2005, following the filing of respondents' briefs, relator filed an amended complaint requesting that the writ order the commission "to vacate its June 27, 2003, December 10, 2004, January 28 and February 16, 2005 orders."